ABRAM SEBORN *et al.*, plaintiffs in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. On a charge of assault with intent to murder, if the assault be not under such circumstances as if death had ensued, it would have been murder, it is illegal to convict the defendants of assault with intent to murder.
2. When three persons are tried together for assault with intent to murder and are found guilty, a new trial may, in this state, be granted as to one or more of the defendants, and the verdict stand as to the others.

Criminal law.    Assault with intent to murder.    New trial. Before Judge SCHLEY.    Screven Superior Court.    November Term, 1872.

.Abram Seborn, Ned Seborn and Sarah Seborn were placed upon trial for the offense of an assault with intent to commit murder, alleged to have been committed upon the person of Joe Lambert, on August 3d, 1871.    The defendants pleaded not guilty.

The evidence for the state made the following case : On the day alleged in the declaration, Joe Lambert was passing down a road in Screven county with his ox cart, when he was hailed by Abram Seborn, who wanted to know about " some tales he had heard." He said whoever had insulted him, white man or black man, he had bought a pistol with which to kill him. Lambert replied that he "did say so," when Abram wheeled and shot him through the arm. Lambert caught hold of a rail and struck him. Ned Seborn, the father of Abram and Sarah, told Abram to kill him. Sarah ran up and struck him on the head with a rail. Lambert then caught Abram and Ned and held them down until they succeeded in getting up and running off. Abram turned and shot him through the thigh. Lambert then went off in his cart. He fainted when the doctor cut the ball out. He had passed the parties about one hundred yards when Abram hailed him. They were over the fence, in the field. He did not go into the field until he was shot the first time. Followed Abram about three hundred yards into the field, trying to reach him before he could cock his pistol. Ned said, after the difficulty, that he wished he had killed Lambert; that he would have been justified in so doing.

The three defendants were introduced as witnesses, it is supposed, by consent, to avoid a severance. They testified substantially as follows :

Lambert was passing along the road when Abram hailed him and said he wanted to see him about some news he had heard. He admitted "the news," and immediately jumped into the field and jerked a rail off the fence, swearing that he would kill Abram or Abram must kill him. Abram walked off ten steps, drew his pistol, and told him to stay off. He

said, "I kill you to-day or you kill me," and knocked Abram down on his knees with the rail, when the latter fired, shooting him through the arm. Before Abram could get up, he threw down the rail and jumped on him. In this condition of affairs, Sarah hit Lambert with a rail. Ned came up and told Abram to "take away his pistol." He "took away his pistol," got up and ran off about fifty yards, Lambert following him with a rail. Ned said, "do you run, and a man trying to kill you? Shoot him again." Lambert still followed him between four or five hundred yards to Ned's house, when he fired the second time. Abram carried his pistol to shoot rabbits. When Ned came up to the combatants, Lambert said to him, "where are you going, you old devil; for if you come any nearer, I will kill you or Abram." The rail with which Sarah struck Lambert was the same one used by the latter in knocking Abram down. Ned told her to knock him again, for he would kill her father or brother.

The jury found the defendants guilty of an assault with intent to murder. They moved for a new trial, because the verdict was contrary to the law and the evidence. The motion was overruled, and defendants excepted.

W. Hobby; J. L. Singleton, by Hilliard & Harrison, for plaintiffs in error.

John W. Robinson, Solicitor General, by B. H. Hill & Son, for the state.

McCay, Judge.

1. There is no good objection to this verdict as to Abram. If the jury believed the state's witness, he was guilty. But taking his whole testimony with the other testimony, we think there is no sufficient evidence of assault with intent to murder against the others. To make out this offense it must appear that had the assault caused the death of the person assaulted, it would have been murder. The evidence of the principal witness would at first seem to implicate all the defendants in

Seborn *et al vs.* The State of Georgia.

the attack on him in the lane. But if it be looked at critically, it will appear that his statements on this point are not definite. He does state that they encouraged and aided Abram, but he does not state the time of their interference; and taking the statements of the other witnesses, especially the evidence of the track of the blood, it would appear that after the attack in the lane and the shooting, then Lambert got over the fence, followed Abram with a rail in his hand, and did his best to commit serious hurt upon him, and that it was during his pursuit of Abram that the old man and the girl interfered and committed the assaults he testifies to. We can excuse him for the anger which led him thus to push the war upon his foe. A man with lead in him from the pistol of an adversary may be excused, at least, if in the passion thus begat, he fails to stand only on his own defense. But the law does not *justify* such acts, and when he crossed the fence, following Abram through his own field with a murderous weapon, endeavoring to strike him, he was himself violating the law. The same charity which excuses him for the anger caused by the wound inflicted on him, will, however, also excuse the old man and the girl for aiding their son and brother when his life was in danger from the anger and the rail of the prosecutor. Abram was retreating. He had got over the fence, got off some one hundred yards, the state's witness, Lambert, was after him hot with rage, and with an instrument of death in his hands. It cannot be fairly said that it was with murderous intent that the old man and the girl interfered. They had a right to interfere at that stage. Lambert had become a wrongdoer, and what they did would not have been murder. Even Abram had a right to turn upon his pursurer, and had he then killed Lambert it would not have been murder. We think, therefore, the verdict as to the old man and the girl is illegal.

2. But it ought to stand against Abram. Under our system of criminal law the principal of severance in all criminal trials is the general rule. There is no reason in the nature of things why the verdict, though set aside as to the two, should not

stand as to the one really guilty. Perhaps by the common law this could not be done. Its strict rules of pleading and adherence to a theoretical accuracy in such matters, though much admired by some, is modified by our law, and we think the modification justifies the disposition we make of this case.

Judgment affirmed as to Abram, and reversed as to Ned and Sarah.